# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LORETTA S. AKERS, | : | |
| Plaintiff, | : | |
| | | Case No. 3:08cv00043 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Loretta A. Akers' employment involved factory work building air-conditioning compressors. (Tr. 507-08). She stopped work in 1998 due to certain health problems such as degenerative lumbar and cervical disc disease causing back pain. (Tr. 104, 508-09).

Plaintiff sought financial assistance by filing an application with the Social Security Administration seeking Disability Insurance Income (DIB). After various administrative proceedings, discussed below, *infra*, §II, the Social Security Administration issued a final decision denying Plaintiff's DIB application based on the conclusion that Plaintiff was not under a "disability" within the meaning of the Social Security Act. *See* Tr. 10-12, 25-45. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g) and 1383(c)(3), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #11), the

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Commissioner's Memorandum in Opposition (Doc. #14), Plaintiff's Reply (Doc. #15), the administrative record, and the record as a whole.

Plaintiff seeks an Order remanding, at a minimum, this matter to the Social Security Administration for proper evaluation. The Commissioner seeks an Order affirming the ALJ's decision.

## II. PROCEDURAL BACKGROUND

Plaintiff filed her DIB application in September 2001 claiming that she had been under a "disability" within the meaning of the Social Security Act since August 15, 1998. (Tr. 95-97). After initial administrative denials of her application, Plaintiff had a hearing before an Administrative Law Judge (ALJ) in March 2004. (Tr. 504-43). Both Plaintiff and a vocational expert testified during the ALJ's hearing. *Id*. The ALJ issued a written decision on May 11, 2004 concluding that Plaintiff was not under a disability. (Tr. 305-14).

Plaintiff sought further administrative review before the Appeals Council of the Social Security Administration contending that the ALJ erred in several respects. (Tr. 315-18). In October 2004 the Appeals Council issued an Order remanding the matter to the ALJ due to certain errors in his decisions. (Tr. 320-23). The Appeals Council determined, for example, that the ALJ did not address the medical source statement dated June 8, 2001 provided by Plaintiff's treating physician, Dr. Page. (Tr. 321).

On remand, Plaintiff's case was assigned to ALJ Melvin A. Padilla, who, in May 2007, provided Plaintiff with another hearing. (Tr. 544-47). Unfortunately the hearing was not fully recorded, and ALJ Padilla consequently held an additional hearing in July 2007 during which Plaintiff testified along with a medical expert, Dr. Lorber, and a vocational expert. (Tr. 554-74). ALJ Padilla issued a written decision on July 26, 2007 denying Plaintiff's DIB application based on his conclusion that Plaintiff was not under a disability. (Tr. 25-45).

ALJ Padilla's July 26, 2007 decision became the Social Security Administration's

final decision, which Plaintiff currently challenges in the present case.

## III.   FACTUAL BACKGROUND

Plaintiff's age at various times placed her in three different categories for the purpose of resolving her disability status: (1) her age (49 years old) on the date of her claimed disability onset placed her in the category of a "younger person"; (2) her age (55) at the time of the ALJ Padilla's decision placed her in the category of a person "closely approaching advanced age"; and (3) her age (56) on the date her insured status expired for DIB eligibility placed her the category of a person of "advanced age." *See* 20 C.F.R. §§404.1563(c)-(e); s*ee also* Tr. 43. Plaintiff's education is "limited" (eleventh grade) for social security purposes. *See* 20 C.F.R. §404.1564(b); *see also* Tr. 43.

Plaintiff testified during her first administrative hearing (March 2004) that she was stopped from working in 1998 because she was unable to perform her job due to pain and her inability to concentrate. (Tr. 508-09). She explained that her foreman "sent [her] to medical. And medical sent [her] home and told [her] to go to the doctor." (Tr. 509). Her own doctor, Dr. Page, put her on "sick leave." *Id*.

Plaintiff testified that it was hard to say if her symptoms had stayed the same, improved, or worsened since 1998. (Tr. 510). She noted, "If I do anything, they get worse. You know, the pain's constant..., if I do any type of activity for any length of time..., they would be worse.... That's why I can't get around." *Id*. at 510-11. Plaintiff acknowledged that at one time, she had been on so much pain medication that she became addicted to it, and she had a rough time when she got off it. (Tr. 513). At the time of the ALJ's March 2004 hearing, she had been off pain medication for two years. *Id*. Plaintiff explains, in her Statement of Errors, that by September 2001, she was completely off her medications and feeling tired and week. (Doc. #11 at 9, n.2)(citing Tr. 159). Plaintiff testified that she did not want to go back on the medication because it constipated her so much she needed to have bowel surgery. (Tr. 513).

Plaintiff further testified that her low-back pain was constant and radiated into her

3

hips when she sits. She felt as if her back was on fire. If she stood for any length of time, the pain would shoot up through her neck and she has "real bad headaches." (Tr. 522). She used non-prescription Tylenol to help with the pain along with a heating pad. *Id*. Plaintiff had good days and bad days. On bad days she would end up on the couch most of the day and took a lot of Tylenol. (Tr. 518). She estimated that half her days were bad days. (Tr. 519).

Plaintiff testified that she could lift ten pounds; she could stand or walk for about a half hour before needing to sit or lie down; and she could sit for one half hour before needing to get up and move around. (Tr. 513-5). Plaintiff indicated that she needed rest period throughout the day especially when she was active. (Tr. 516, 523).

During Plaintiff's hearing before ALJ Padilla (July 2007), she indicated that she had degenerative discs in her lower back and neck, arthritis in her neck, spondylosis in her right hip and knees, fibromyalgia, and "terrible headaches." (Tr. 555). Plaintiff testified that those problems precluded her from working or doing anything. (Tr. 555-56). She experienced those same problems through December 2004 – the last time she was insured for DIB purposes. *Id*. Although she would attempt to walk a little every day, she generally could only do so for about ten minutes. (Tr. 559). The longest she could stand and walk was about thirty to forty-five minutes when she need to grocery shop (her son or daughter would push the cart). (Tr. 561). She could stand in one place for five minutes; she could sit for one-half hour before needing to lie down; and she could lift five-to-ten pounds. (Tr. 561-62).

Turning to the other evidence and other information in the administrative record, the parties have provided informative and detailed descriptions of that evidence. *See* Doc. #11 at 3-11; Doc. #14 at 2-5; Doc. #15. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative. Yet a brief description of the most significant medical sources upon will help frame further review.

4

The Appeals Council's remand Order required ALJ Padilla to, among other things, obtain additional evidence concerning Plaintiff's orthopedic impairments including the opinions of a consultative orthopedic examining physician. (Tr. 322). Pursuant to that directive, orthopedic surgeon Richard T. Sheridan, M.D., examined and interviewed Plaintiff in January 2007. At the conclusion of his detailed report (Tr. 445-61), Dr. Sheridan diagnosed Plaintiff in part with "chronic cervical and lumbar strains with cervical and lumbar degenerative disc disease without evidence of cervical or lumbar radiculopathy" and with carpal tunnel syndrome as well as a history of chronic obstructive pulmonary disease. (Tr. 451). Dr. Sheridan also concluded:

> I think she can do a sit-down and needs to be precluded from rapid manual work and exposure to temperature extremes with her hands. I think she can lift up to 10 pounds maximally.

(Tr. 451). Plaintiff notes that although Dr. Sheridan examined Plaintiff well after her insured status for DIB eligibility expired (in December 2004), he based his opinions on his own examination findings along with his review of MRI findings on August 2, 2005, near the time (December 2004) when she was last insured for DIB purposes. (Doc. #11 at 8-9, 13-14; Doc. #15 at 1-2).

During ALJ Padilla's hearing in July 2007, Dr. Lorber testified that he reviewed the file. He noted that a physician, Dr. Bernstein, had recommended back surgery in 1998 but could not guarantee success, and Plaintiff "rejected that surgery." (Tr. 568). Dr. Lorber observed that an MRI in June 2001 revealed minimal disc bulging. *Id*. But, according to Dr. Lorber, there did not "appear to be a basis in the records for recommending any surgery. There is nothing to support that the patient had a severe problem...." (Tr. 569). Dr. Lorber recognized that he did not have Dr. Bernstein's records, and he could not answer why Dr. Bernstein recommended surgery. *Id*.

Dr. Lorber testified that Plaintiff's more recent MRI in 2005 showed "significant degenerative disc disease." (Tr. 569). He explained, "Statistically, it's likely that it will get worse. But there are occasions when the disc protrusions spontaneously resolve. But

more likely than not, it will progress. (Tr. 570).

Dr.Lorber opined that before her date last insured, Plaintiff was capable of performing medium work with no restrictions.[2] (Tr. 568). This opinion was consistent with the opinions of Dr. Albert, who reviewed Plaintiff's records in 2002 at the request of the Ohio Bureau of Disability Determinations. (Tr. 252-57). Dr. Albert acknowledged that Plaintiff had complained of fibromyalgia, degenerative disc disease, bowel problems, and neck problems. (Tr. 253). Dr. Albert explained that a November 2001 consultative examination showed mildly limited range of motion in her cervical spine and otherwise showed largely normal findings. (Tr. 253-54). Dr. Albert further explained that March 2002 progress notes from Dr. Bruce showed good range of motion in the lumbar spine and excellent range of motion in the cervical spine. (Tr. 254). According to Dr. Albert, a June 2001 MRI showed no disc herniation and minimal bulging at L4-5 and L5-S1. *Id*. And Dr. Albert observed that a consultative examination in July 2000 yielded no evidence of cervical or lumbar radiculopathy; normal range of motion in her neck, shoulders, elbows, wrists, and hands; and straight-leg raising was negative. *Id*.

## IV.    ADMINISTRATIVE REVIEW

### A.    "Disability" Defined And The ALJ's Sequential Evaluation

The term "disability" as defined by the Social Security Act carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national

---

[2] Under the Regulations, "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

economies.[3] *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B.     The ALJ's Decision

The ALJ's decision focused on whether Plaintiff was under a "disability" from August 15, 1998 (her claimed disability onset date) through December 31, 2004 (her date last insured).

The ALJ determined at Step 1 of the sequential evaluation that Plaintiff had not engaged in any substantial gainful activity at any relevant time. (Tr. 29).

At Step 2 the ALJ found that Plaintiff had the severe impairments of "lumbar

---

[3] Impairments must also be either expected to cause death or last at least twelve months. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

7

degenerative disc disease; cervical degenerative disc disease; and history of alcohol and narcotic medication abuse/dependence in questionable remission (as there is some continued use of those substances)...." (Tr. 29).

The ALJ determined at Step 3 that neither Plaintiff's back impairment nor a combination of impairments met or equaled the criteria of an impairment in the Listings. (Tr. 38).

At Step 4 the ALJ assessed Plaintiff' residual functional capacity as follows:

> [T]he claimant has the residual functional capacity to: lift up to fifty pounds occasionally and twenty five pound frequently; she must have the option to alternate positions; she is limited to inside work in a temperature-controlled environment; not climbing ladders, scaffolds or working at unprotected heights; no use of vibrating tools; no working around or operating hazardous machinery; and she is limited to unskilled, simple, repetitive tasks. Therefore, she is limited to a reduced range of medium work.[4]

(Tr. 38)( footnote added). The ALJ further determined at Step 4 that Plaintiff could not perform her past relevant work. (Tr. 43).

The ALJ's assessment of Plaintiff's residual functional capacity, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence not eligible for DIB. (Tr. 25-45).

## V.    JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a

---

[4] Under the Regulations, "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389,401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors).

Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

## VI.  ANALYSIS

Plaintiff contends that the ALJ erred by rejecting the opinion of consultative examiner, Dr. Sheridan, "without determining whether Dr. Sheridan's opinion, in combination with radiographic evidence, related back to [Plaintiff's] date last insured." (Doc. #11 at 13). Plaintiff reasons that the ALJ provided no rationale for why the objective findings in Plaintiff's August 2005 MRI – which showed degenerative disc disease at L4-5 and L5-S1 with marked disc space narrowing at L5-S1 – did not support Dr. Sheridan's opinion that Plaintiff was limited to sedentary work. *Id*. at 13-14 (citations omitted).

Plaintiff's challenges to the ALJ's rejection of Dr. Sheridan's opinion lacks merit. The ALJ weighed Dr. Sheridan's opinions under several factors required by the Regulations. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). The ALJ first recognized a factor in favor of crediting Dr. Sheridan's opinion, namely his status as an orthopedic specialist. *See* Tr. 42; *see also* 20 C.F.R. §404.1527(d)(5). The ALJ essentially found this factor outweighed by the fact that Dr. Sheridan summarized his finds without indicating "any objective findings of serious impairments (for instance, her gait was normal, and there were no reports of significant neurological deficits but mainly right sacroiliac join pain...." (Tr. 42). A review of Dr. Sheridan's report reveals that, as Plaintiff points out, he considered the MRI reports in August 2005. *See* Tr. 450. Yet Dr. Sheridan's discussion and opinions merely listed 5 diagnoses along with his conclusion that Plaintiff was limited to sedentary work. *See* Tr. 451. Substantial evidence therefore supports the ALJ's reason for rejecting Dr. Sheridan's opinions, because Dr. Sheridan provided no supporting explanation addressing why he concluded that Plaintiff could perform only sedentary work and because Dr. Sheridan did not indicate that his review of Plaintiff's August 2005 MRI supported his opinions. *See* Tr. 451. Indeed Dr. Sheridan provided no explanation in support of his specific assessments of Plaintiff's work abilities and limitations. *See* Tr. 451, 456-61. Dr. Sheridan's report, moreover, cannot be reasonably read as stating his opinion

regarding Plaintiff's work abilities before her date last insured. Instead it appears that he only considered Plaintiff's work abilities on the date of her examination in January 2007. *See* Tr. 445-461. For these reasons, the ALJ did not err in rejecting Dr. Sheridan's opinions.

The Commissioner correctly contends that the ALJ's assessment of Plaintiff's Residual Functional Capacity at a limited range of medium work is supported by substantial evidence including medical source opinions. As the ALJ discussed, his finding was based on the opinions provided by medical expert Dr. Lorber in 2007 as well as the state agency reviewing physicians' 2002 opinions. *See* Tr. 38).

In April 2002, during the insured period, a state agency reviewing physician, Dr. Albert, concluded Plaintiff was capable of performing a full range of medium work. (Tr. 252-257). The ALJ was entitled to consider and rely on that opinion, although he ultimately found, in Plaintiff's favor, that she was more limited than the reviewing physician concluded. Dr. Albert considered the medical evidence in light of Plaintiff's allegations of pain, fibromyalgia, and degenerative disc disease as well as problems with her neck and bowels. (Tr. 253). He explained that a consultative examination of November 2001 revealed a mildly limited cervical range of motion, findings were largely normal. (Tr. 253-254). He noted that March 2002 progress notes from Dr. Bruce showed good range of motion in the lumbar spine and excellent range of motion in the cervical spine. (Tr. 254). Dr. Albert also considered that a June 2001 MRI showed no disc herniation and only minimal bulging at L4-5 and L5-S1; and, a consultative examination of July 2000 yielded normal results, including normal ranges of motion and no evidence of radiculopathy. (Tr. 254).

The ALJ properly relied on the state agency reviewers' opinions because they were consistent with and supported by the record medical evidence relating to the relevant period during which Plaintiff was insured for disability benefits. In addition, the ALJ's reliance on Dr. Albert's opinions reflects the approach set forth in Social Security

Regulations and Rulings, which expressly recognize that state agency physicians are "highly qualified physicians. . . who are also experts in Social Security disability evaluations." *See* 20 C.F.R. §404.1527(f)(2)(i); *see also* Social Security Ruling 96 6p; *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (state agency reviewers' opinions were properly relied upon as a basis to reject examining psychologist's opinion).

Similarly, the ALJ relied on the opinion of Dr. Lorber, the medical expert and orthopedic surgeon, who concluded that prior to Plaintiff's date last insured she was capable of functioning at the medium level with no restrictions. *See* Tr. 38-39, 568. The ALJ noted Dr. Lorber's consideration of the objective medical evidence; for example, he reported that an MRI of June 2001 revealed only minimal disc bulges. *See id*. Dr. Lorber further considered Plaintiff's allegations of a recommendation for back surgery in 1998; he noted that "there does not appear to be a basis in the records for recommending any surgery. There is nothing to support that the patient had a severe problem and [he could] not answer why Dr. Bernstein would advise surgery" (Tr. 569).

Thus, for the above reasons, the opinions of Drs. Lorber and Albert constituted substantial evidence in support of the ALJ's assessment of Plaintiff's Residual Functional Capacity.

Plaintiff argues that the ALJ should have required the medical expert to draw an inference concerning the period prior to her date last insured and she cites to Social Security Ruling 83-20. However, Ruling 83-20 provides that having already determined "that an individual is disabled, the decisionmaker must also establish the onset date of disability." Notably, in this case, there was no finding of disability and Ruling 83-20 therefore does not apply. *See McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *see also Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) ("SSR 83-20 is not applicable to this case, since this policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began."); *Spradlin v. Secretary of Health & Human Servs.*, 857 F.Supp. 1215, 1217, 1224

(S.D. Ohio 1993) (Rice, D.J.).

Plaintiff also asserts that the ALJ made no attempt to infer an onset date of disability and claims that Dr. Lorber testified that the MRIs documented a progressive disease. First, Dr. Lorber did not affirmatively opine that the MRI results proved that Plaintiff had a progressive disease herself. More accurately, in response to Plaintiff's counsel's cross-examination, Dr. Lorber testified that degenerative disc disease is a progressive type of disease which could "statistically" worsen. (Tr. 570). Plaintiff's more recent MRI of 2005 showed significant degenerative disc disease. (Tr. 569). The ALJ specifically considered any inference of "progressive deterioration perhaps with the possibility of relating back to the period in issue." (Tr. 39). Nonetheless, the ALJ found that this evidence did not support Plaintiff's claims of disabling impairments during the relevant period.

Next, the ALJ questioned Plaintiff extensively about her condition prior to her date last insured. He asked her to describe the problems that she had through December 2004. (Tr. 556). The ALJ also questioned Plaintiff about Dr. Page, noting that he had been her treating physician since 2004. (Tr. 560). The ALJ asked Plaintiff about her ability to sit, stand, lie down and walk, as well as the duration for those actions currently and in 2004; Plaintiff replied that her abilities were "about the same" and "stayed the same." (Tr. 562).

Plaintiff next argues that the ALJ overlooked her 2004 hearing testimony. This argument does not show error by the ALJ. A transcript of that testimony was contained in the record before the ALJ, and the ALJ noted his "careful consideration of all the evidence." (Tr. 27). In addition, a review of that 2004 testimony shows that Plaintiff's allegations of limitations were essentially unchanged from 2004, and would not preclude performance of a significant number of jobs as described by the vocational expert. She was able to lift 10 pounds (Tr. 513); she could stand ½ hour (Tr. 514). Plaintiff was limited in postural movements. (Tr. 516). She was fairly active and tried to walk in the afternoons, depending on the weather and her prior day's activities. (Tr. 518). Even if it

is assumed that the ALJ did not consider this 2004 testimony, during the 2007 hearing, the ALJ asked Plaintiff to describe the problems that she had through December 2004. (Tr. 556). The ALJ discussed her 2007 testimony in great detail, and substantial evidence of record supports the ALJ's reasons for not credited that testimony. *See* Tr. 27-29, 42-43.

Accordingly, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be affirmed; and

2. The case be terminated on the docket of this Court.


February 12, 2009

                                            s/ Sharon L. Ovington
                                                 Sharon L. Ovington
                                      United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).